## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| JOHN F. NEDELKA and | ) | Case No.  10-11803 (BLS) |
| KATHERINE M. NEDELKA, | ) | |
| | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| JOHN F. NEDELKA and | ) | Adv. No. 17-50958 (BLS) |
| KATHERINE M. NEDELKA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## OPINION[1]

Before the Court is a Motion for Summary Judgment [Adv. Docket No. 17] filed by

Defendant Internal Revenue Service ("the IRS" or "Defendant"). For the following reasons, the

Court will GRANT the Defendant's Motion for Summary Judgment.

## BACKGROUND

The Debtors filed a Chapter 13 bankruptcy petition on June 3, 2010 [Docket No. 1]. They

filed an initial plan on June 11, 2010. [Docket No. 12]. That plan provided for the Nedelkas' tax

liabilities for tax years 2004, 2005, and 2006 (the "Tax Debts"). The Debtors had filed the

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law, as required by the Federal Rules of
Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7052, 9014(c).

returns for those tax years in 2010, after the IRS made independent assessments of their tax liabilities for those years.

The IRS objected to the Nedelkas' initial plan on a number of grounds, although it did not explicitly assert that the Tax Debts were ineligible for discharge [Docket No. 21]. In response to the IRS' objection, among others, the Nedelkas filed an amended plan which was confirmed by this Court on January 24, 2011 (the "Confirmed Plan") [Docket No. 21].[2] By all accounts, the Nedelkas fully performed their obligations pursuant to the Confirmed Plan, and on April 7, 2016 the Chapter 13 Trustee filed an "*Interim Account of Chapter 12/13 Trustee, Declaration of Full Performance and Request for Discharge of Debtor(s) and Entry of Order Deeming Any Mortgage Current*" [Docket No. 150]. The Chapter 13 Trustee's accounting listed four claims by the IRS, with each having a "balance due" of zero [Docket No. 150 at 6.] The Court issued a discharge order on May 10, 2016 granting the Nedelkas a "discharge under 11 U.S.C. § 1328(a)" (the Discharge Order) [Docket No. 154].

In 2017, the Nedelkas filed a complaint alleging that the IRS had violated the Discharge Injunction by attempting to collect on the Tax Debts. This complaint asserts that the Tax Debts were discharged in the Nedelkas' June 27, 2010 discharge. They base this assertion on a few undisputed facts: the relevant returns were "filed or given" to an agent of the IRS in 2010; the Tax Debts were provided for in their plan; and the IRS withdrew its objection to their plan without affirmatively asserting that the Tax Debts should not be discharged pursuant to that plan.

The IRS takes the position that the Plaintiffs' complaint is without merit because the Tax Debts were not discharged. They base this position on their interpretation of the explanatory text attached to the Discharge Order. This "general summary of a chapter 13 discharge" lists

---

[2] There were a number of subsequent amendments to the Nedelkas' plan, none of which are material to this proceeding.

"[e]xamples of debts that are not discharged" such as "debts for certain types of taxes specified in [11 U.S.C.] 523(a)(1)(B)…to the extent not paid in full under the plan." The IRS concludes that, because § 523(a)(1)(B)(i) applies to the Tax Debts, this text attached to the Discharge Order effectively excluded the Tax Debts from discharge. In line with that position, the IRS filed a motion for summary judgment [Adv. Docket No. 17] by which it asks the Court to find that the Tax Debts were not discharged by the Discharge Order.[3]

In response to the IRS' motion, the Nedelkas have asserted that § 1328(a) and § 523(a)(1)(B)(i) do not apply, because they filed the relevant tax returns in 2010. They also contend that, irrespective of whether § 1328(a) and § 523(a)(1)(B) directed the Court not to discharge the Tax Debts, the Tax Debts *were* discharged by the Discharge Order. They note that the Confirmed Plan provides for the Tax Debts, and reason that because the Tax Debts were provided for in the Confirmed Plan, they were discharged by the Discharge Order.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. A fact is only material "if it might affect the outcome of the suit under the governing law." *Norfolk S. Ry. Co. v. Pittsburgh & W. Virginia R.R.*, 870 F.3d 244, 253 (3d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).) In considering a

---

[3] In Chapter 13 proceedings, discharge orders discharge the debts provided for in the debtors' confirmed Chapter 13 plan, with some important exceptions. See 11 U.S.C. § 1328(a).

motion for summary judgment, the Court need only consider the materials cited by the parties but may consider "other materials in the record." FRCP 56(c)(3); Fed. R. Bankr. P. 7056.

## JURISDICTION AND VENUE

The Court has jurisdiction to hear this matter under 28 U.S.C. §§ 1334 and 157(b)(2)(O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), (I), (J) and (O).

## ANALYSIS

The Debtors received a discharge pursuant to § 1328(a) when the Court issued the Discharge Order. § 1328(a) provides that the Court shall discharge all debts "provided for by the plan," with some important exceptions. The Court is not to discharge tax liabilities:

> with respect to which a return, or equivalent report or notice, if required—
> > (i) was not filed or given; or
> >
> > (ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition…

11 USC § 523(a)(1)(B). After BAPCPA, a document filed or sent to the IRS does not necessarily qualify as a "return." *See In re Giacchi*, 856 F.3d 244, 247-48 (3d Cir. 2017) (citing the hanging paragraph in 11 U.S.C. § 523(a)). Instead, for such a document to be considered a "return…filed or given" under § 523(a)(1)(B)(i), it must "satisf[y] the requirements of applicable nonbankruptcy law (including applicable filing requirements)." *Id*. Applicable nonbankruptcy law in this scenario is tax law, and settled tax law has long held that for a document to considered a "return," it must meet four requirements:

> (1) it must purport to be a return, (2) it must be executed under penalty of perjury, (3) it must contain sufficient data to allow calculation of tax, and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law.

*In re Giacchi*, 856 F.3d at 248 (citing *Beard v. Comm'r*, 82 T.C. 766, 777 (1984), *aff'd*, 793 F.2d 139 (6th Cir. 1986)). The fourth requirement, that a purported return must "represent an honest and reasonable attempt to satisfy the requirements of the tax law," is not met when a tax return is filed late and after an IRS assessment, as were the Nedelkas' returns. *Id*. ("Forms filed after their due dates and after an IRS assessment rarely, if ever, qualify as an honest or reasonable attempt to satisfy the tax law.") Given that, a return was not "given or filed" for the Tax Debts, and, therefore, they are not dischargeable under §§ 1328(a) and § 523(a)(1)(B)(i).

While the parties focused their briefing on § 523(a)(1)(B)(**i**), the plain language of § 523(a)(1)(B)(**ii**) is also clearly relevant and applicable to the Tax Debts. That section, along with § 1328(a), directs the Court not to discharge tax debts for which a "return…was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition." The Nedelkas filed the returns for the Tax Debts after those returns were due, in 2010. Because the Nedelkas filed their petition in 2010, the returns were filed "after two years before" the date for which they filed their Chapter 13 petition.

That means that when the Discharge Order was issued, the Tax Debts were *not* dischargeable based on the plain language of §§ 1328(a) and 523(a)(1)(B)(**ii**); nor were they dischargeable under §§ 1328(a) and 523(a)(1)(B)(**i**) as interpreted in this Circuit by *In re Giacchi*, 856 F.3d 244, 247 (3d Cir. 2017). *Cf. In re Fahey*, 779 F.3d 1, 4 (1st Cir. 2015); *In re McCoy*, 666 F.3d 924, 932 (5th Cir. 2012) (holding that returns filed even one day late do not constitute "returns" under BAPCPA). The Discharge Order did not discharge the Tax Debts.

<u>A. Estoppel or other equitable theories do not authorize the discharge of the Tax
Debts</u>

The Nedelkas separately assert that they presumed that the Tax Debts were dischargeable based on the IRS' behavior during the pendency of the bankruptcy, and ask the Court to use its equitable powers to determine that the Tax Debts were discharged.  They note that the IRS did not attempt to litigate or ask the Court to determine the dischargeability of the Tax Debts; did not object to the Confirmed Plan; and did not object to the Discharge Order.  Essentially, they contend that they were surprised by the IRS' assertion that debts that were provided for in the Confirmed Plan were nonetheless excepted from discharge.[4] The Debtors also argue that a confirmed plan may have a preclusive effect regarding the discharge of certain debts and that the IRS' failure to object estops the IRS from arguing that they were not discharged. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010).

The elements of equitable estoppel generally require the Nedelkas to show "(1) a misrepresentation by another party; (2) which [they] reasonably relied upon; (3) to [their] detriment." *United States v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987). Furthermore, in this circuit, asserting equitable estoppel based upon the actions of the IRS would also require that the Nedelkas "establish some affirmative misconduct" on the part of the IRS. *Fredericks v. Comm'r*, 126 F.3d 433, 438 (3d Cir. 1997) (internal quotations removed). The Debtors have not shown that the IRS has made any kind of affirmative misrepresentation. Nor have they shown that the IRS withheld information or otherwise failed to disclose a material fact which was unknown to the Nedelkas. *See In re Okan's Foods, Inc.*, 217 B.R. 739, 752 (Bankr. E.D. Pa. 1998) ("The knowing failure of a party to disclose a material fact…may be construed as a false representation

---

[4] Although these arguments were made in response to the IRS' assertion that the Tax Debts were dischargeable based on 11 USC § 523(a)(1)(B)(i), they would also apply, presumably, to the Court's analysis that the Tax Debts fall within 11 USC § 523(a)(1)(B)(ii), and the Court will address those arguments in both contexts.

or concealment by such party."). The Nedelkas knew, and do not dispute, that their returns were filed late, and filed less than two years before they filed their plan. There is no doubt that the Nedelkas would have been aware of these facts at the time of the plan confirmation, at the time that the Discharge Order was issued, and throughout the pendency of their proceedings in this Court.  Debtors were not surprised by the relevant facts, although they may have been surprised by their legal relevance.

The fact that the IRS did not proactively litigate the discharge status of the Tax Debts during the pendency of the Debtors' bankruptcy proceeding does not constitute an affirmative representation by the IRS that the Tax Debts were dischargeable under 11 U.S.C. § 523(a)(1)(B)(i) or (ii). The Code provides that *some* types of debts are presumptively dischargeable, but tax debts specified in §§ 523(a)(1)(B)(i) or (ii) are not among them.[5] Instead, tax debts specified in §§ 523(a)(1)(B)(i) or (ii) are presumptively *non-dischargeable*. Unless a debtor pursues an order stating otherwise, creditors may reasonably assume that such debts will not be discharged under § 1328(a).

Further, the fact that a confirmed plan provides for a given debt does not mean that the debt is dischargeable, or that it will be necessarily discharged by the subsequent discharge order. While the Debtors' briefing indicates that they believed that the Tax Debts being provided for in the Plan would lead to the discharge of those Tax Debts being discharged, § 1328(a) directs the Court to "grant the debtor a discharge of *all debts provided for by the plan* or disallowed under section 502 of this title, *except* any debt" that is explicitly excluded from discharge by the Code.

---

[5] 11 U.S.C. § 523 states that "Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section." There is no such provision for § 523(a)(1).

11 U.S.C. § 1328(a) (emphasis added). The plain language of that statute, then, indicates that providing for a debt in a plan may not necessarily lead to that debt being discharged.

## CONCLUSION

The Nedelkas' 2004 tax liabilities were not discharged because the returns for the debts were not filed on time, or at least two years before the commencement of the Chapter 13 case. Section 1328(a) read together with 11 USC § 523(a)(1)(B) clearly excludes tax liabilities from discharge when the relevant tax return "was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition." The undisputed record indicates that the Nedelkas' return for tax year 2004 was filed in 2010, the same year in which the Nedelkas filed their petition for Chapter 13 bankruptcy. Thus, their return was both "filed or given after the date on which such return…was last due" and was filed "after two years before the date of the filing of the petition." Given that, the Nedelkas' 2004 tax liabilities were not dischargeable by § 1328(a) and were not discharged by the Discharge Order.  As a result, any collection activity by the IRS for tax liabilities incurred by the Nedelkas in 2004 did not violate the discharge injunction.

The same analysis applies to the Nedelkas' tax liabilities for tax years 2005 and 2006, although those debts were paid in full by the debtors pursuant to their confirmed plan. The returns for those tax years were filed in 2010, which means that they were both "filed or given after the date on which such return[s]…[were] last due" and were filed "after two years before the date of the filing of the petition." Those debts were clearly not dischargeable by § 1328(a), and were not discharged by the Discharge Order. Because those debts were not discharged, any

outstanding post-petition interest on those debts remains the personal liability of the debtors.[6]

Therefore, any collection activity taken by the IRS for post-petition interest on the Nedelkas'

2005 or 2006 tax liabilities did not violate the discharge injunction.

For the reasons detailed above, the Defendant's Motion for Summary Judgment is hereby

GRANTED.  The parties are requested to confer and submit an order conforming to this

Opinion.

By the Court:

Dated: December 20, 2018

BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE

---

[6] Post-petition interest on nondischargeable debts remains the personal liability of the debtor, even when those obligations are paid in full. *In re Interval*, 568 B.R. 259, 263 (Bankr. W.D. Pa. 2016) citing *Leeper v. Pa. Higher Educ. Assistance Agency*, 49 F.3d 98, 100 (3d Cir. 1995).